## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MEDIA CONTENT PROTECTION LLC,    )
   )
   )
   Plaintiff,    )   C.A. No. 20-1247-CFC
   )
   v.    )
   )
REALTEK SEMICONDUCTOR CORP.,    )
   )
   Defendant.    )

## DEFENDANT REALTEK SEMICONDUCTOR CORP.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)

*Of Counsel:*

Sten A. Jensen
Christopher J. Higgins
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue
Washington, D.C. 20037
(202) 339-8400
sjensen@orrick.com
chiggins@orrick.com

Joseph Kolker
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019-6142
(212) 506-5000
jkolker@orrick.com

Dated: February 14, 2025

ASHBY & GEDDES
John G. Day (#2403)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-188
jday@ashbygeddes.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.   BACKGROUND ................................................................. 3

    A.    Nature and Stage of the Proceedings ..................................... 3

    B.    The '564 Patent ........................................................... 3

III.  LEGAL STANDARDS ......................................................... 9

    A.    Rule 12(c): Motion for Judgment on the Pleadings ............................ 9

    B.    Section 101: Patent Eligibility................................................ 9

        1.    Step 1: Are the Claims Directed to an Abstract Idea? ............. 10

        2.    Step 2: Do the Claims Provide an Inventive Concept?............. 11

IV.   ARGUMENT................................................................... 12

    A.    The '564 Patent is Directed to Patent Ineligible Subject Matter ........ 12

        1.    The '564 Patent is Directed to the Abstract Idea of Sending and Receiving Data ..................................................... 12

        2.    The Claimed Second Device Provides No Inventive Concept ................................................... 18

    B.    The '564 Patent is Ripe for a Determination on Eligibility ............... 19

V.    CONCLUSION............................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ........................................................... 19

*Affinity Labs of Tex., LLC v. Amazon.com* (*Affinity I*),
    838 F.3d 1266 (Fed. Cir. 2016) ........................................................... 10

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).................................................................*passim*

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................... 20

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ........................................................... 18

*Certain Digital Video-Capable Devices and Components Thereof*,
    Inv. No. 337-TA-1224 ......................................................................... 3

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ...................................................... 10, 19

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019).................................................... 17

*Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ................................................... 10, 11

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ................................................... 12, 17

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................. 10, 12, 18

*Ericsson Inc. v. TCL Commc'ns Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) ..................................................*passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) .......................................................................14

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) .......................................................................11

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) .................................................................15, 16

*Internet Pats. Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .......................................................................15

*Jablonski v. Pan Am. World. Airways, Inc.*,
  863 F.2d 289 (3d Cir. 1988) ...............................................................................9

*KOM Software Inc. v. NetApp, Inc.*,
  697 F. Supp. 3d 203 (D. Del. 2023) (Bryson, J.)...............................................9

*Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*,
  566 U.S. 66 (2012).....................................................................................11, 14

*MobileAcuity Ltd. v. Blippar Ltd.*,
  110 F.4th 1280 (Fed. Cir. 2024) .........................................................................8

*NetSoc, LLC v. Match Grp.*,
  838 F. App'x 544 (Fed. Cir. 2020) ...................................................................17

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ....................................................................10, 17

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ...........................................................11, 17, 18

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ......................................................................13, 14

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) .......................................................................2, 9

*Two-Way Media Ltd v. Comcast Cable Commc'ns., LLC*,
  87 Inv. No. 3374 F.3d 1329 (Fed. Cir. 2017) ..................................................11

*U.S. ex. rel. Spay v. CVS Caremark Corp.*,
    913 F. Supp. 2d 125 (E.D. Pa. 2012) ................................................................9

**Statutes**

35 U.S.C. § 101 ...............................................................................................*passim*

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Media Content Protection LLC ("MCP") has accused Realtek Semiconductor Corp. ("Realtek") of infringing claims 1, 2, 6-11, 14, 18-23, and 25 (the "Asserted Claims") of U.S. Patent No. 10,298,564 (the "'564 Patent"). *See* Second Amended Complaint ("Complaint"), Count I.   As the Court has now construed the Asserted Claims at MCP's urging, the Asserted Claims recite nothing more than basic steps of creating, sending, and receiving data.  Accordingly, the Asserted Claims are ineligible under 35 U.S.C. § 101, and Realtek respectfully moves the Court to grant judgment on the pleadings for Count I of the Complaint (D.I. 99).

The Asserted Claims are directed to "instructions" to be executed on a generic "processor" to perform basic functions of sending, creating, and receiving data.  This is an abstract idea.  While the patent as a whole is directed to measuring distance between two devices, the environment in which the claims place this generic processor is a generic "second device," or a receiver/receiving device that does *not* measure distance. Whether the claimed "second device" can receive data/content is determined solely by a "first device" (i.e., transmitter), and the Asserted Claims recite several functional attributes of this "first device."  Yet, admittedly this "first device" is ***not*** claimed and is ***not*** limiting on the claimed "second device."  MCP argued through its pleadings and claim construction briefing that the claim elements related to a "first device" are not limiting on the claimed "second device" that is at the heart of the Asserted Claims.

1

MCP took that position because it lost on infringement at the International Trade Commission based on a ruling to the contrary – i.e., a ruling that the claimed second device of the Asserted Claims was indeed limited by the first device elements.  But this Court's ruling that the "first device" elements do not limit the claimed "second device" exposes a fatal defect in the Asserted Claims; those claims, as now construed, recite basic steps that use generic computer technologies to create, send, and receive data.  This is precisely "the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which [the Federal Circuit has] repeatedly found unpatentable."  *Ericsson Inc. v. TCL Commc'ns Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020).

Moreover, the Asserted Claims do not recite any "inventive concept" that is "significantly more" than the abstract idea itself to save themselves under Step 2 of *Alice*.  Rather, the claims recite a generic, well-known component (a processor circuit) that implements generic functions (create, send, and receive data).  Indeed, the purported "inventive concept" identified in the patent specification of a distance measurement between two devices is entirely performed by the "first device" which is not claimed in or limiting on the Asserted claims.  Such results-oriented claims directed to the abstract idea of controlling access to resources are routinely held ineligible under 35 U.S.C. § 101.  *See, e.g.*, *id.* at 1328 (claims directed to end-result "do not 'ha[ve] the specificity required to transform a claim from one claiming only a result to one claiming

a way of achieving it.'" (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)).  The Asserted Claims therefore are not patent eligible under 35 U.S.C. § 101, and Count I should be dismissed on the pleadings, pursuant to Rule 12(c).

## II.     BACKGROUND

### A.     Nature and Stage of the Proceedings

This case resumed in the District Court after a stay in favor of *Certain Digital Video-Capable Devices and Components Thereof*, Inv. No. 337-TA-1224 (USITC), which has concluded.  D.I. 15-16; D.I. 18-19.  The parties have exchanged final contentions and the Court has issued a *Markman* Order.  Pleadings have closed.  D.I. 91 Ex. A.  Trial in this action is scheduled for July, 2026.  D.I. 91 ¶ 27.

### B.     The '564 Patent

The majority of the specification and the Asserted Claims of the '564 patent are directed to two materially different concepts.  The specification plainly states that "[t]he invention relates to a method for a ***first communication device*** to perform authenticated distance measurement between the first communication device and ***a second communication device***."  '564 patent, Abstract.  In layman terms, a ***first device*** (e.g., blue 201 below) performs an algorithm to determine if a ***second device*** (e.g., yellow 203 below) is close enough in distance such that the first device can send protected content to the second device.  *See id.* at 5:42-46, 6:52-60.  The entire three-page specification is directed to the "method" of "authenticated distance measurement" performed by the ***first device***.  *See, e.g., id.* at 2:50-6:65.  The ***second device*** appears in

3

the specification as an empty black box with no details about its structure or function.



FIG. 2

But the Asserted Claims of the '564 patent in the Second Amended Complaint are *not* directed to the alleged inventive first device.[1]  Instead, the Asserted Claims are directed to and claim only the operation of a *second device*.  This difference is significant and dispositive of the Motion.

The Asserted Claims of the '564 Patent are directed to the functionality of a second device, which is just a "dumb" device that sits and waits for the "first device" to make all determinations with respect to measurement and sending data to the "second device":

> 1. *A second device* for receiving delivery of a protected content from a first device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:
>> *provide a certificate* to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;
>> *receive the first signal* when the certificate indicates that the second

---

[1] In an action against Intel (20-cv-1243), MCP asserts a parent patent to the '564 patent that includes claims directed to the *first device*.  Those claims would be subject to a different patent eligibility determination.

> device is compliant with at least one compliance rule;
> **create a second signal**, wherein the second signal is derived from a secret known by the second device;
> **provide the second signal** to the first device after receiving the first signal, wherein the second signal is received by the first device; and
> **receive the protected content** from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time.

'564 Patent, Claim 1. As shown in bold, the claimed **second device** is only recited as either sending or receiving data to or from a first device. The alleged "invention" described in the specification of the '564 patent – performing a method of authenticated distance measurement – is not performed by the claimed second device. The claim specifies that it is performed by an unclaimed first device.

MCP has taken the position that the "first device" clauses in claim 1 (in red below) are nonlimiting on the claimed second device and that claim 1 does not include a first device as required structure or function. *See* D.I. 99 at Exhibit B; *see also* C.A. No.: 20-cv-1243, D.I. 49 (hereinafter "Joint Claim Construction Br.) at 102 (arguing that first device limitations are not required elements of the claim).

> 1. **A second device** for receiving delivery of a protected content from a first device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:
> > provide a certificate to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;
> > receive the first signal when the certificate indicates that the second device is compliant with at least one compliance rule;
> > create a second signal, wherein the second signal is derived from a

secret known by the second device;

provide the second signal to the first device after receiving the first signal, wherein the second signal is received by the first device; and

receive the protected content from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time.

Simply put, MCP's pleadings and positions taken with this Court are that the "first device" elements are not required to be shown in the claimed "second device" to prove infringement, and are therefore, not limiting on the claimed "second device." The Court adopted this position in its claim construction ruling. *Markman* Order" at 3-4 ("Plain and ordinary meaning, subject to lines 117:11-22, 118:5-9, and 118:18-119:18 of the June 7, 2023 *Markman* hearing transcript"); C.A. No.: 20-cv-1243, D.I. 58 (hereinafter "*Markman* Hearing Tr.") at 119:15-17 ("THE COURT: All right. So I'm going to give it its plain and ordinary meaning, but to be clear, I agree with the plaintiffs. All right?"); *Markman* Order at 4 ("wherein the second signal is received by the first device" is not limiting). Under this interpretation, a second device need only be arranged to "receive the protected content"—the conditions following the word "when" and "after" in the claim language are effectively nonlimiting in the apparatus claim. *See Markman* Hearing Tr. at 118:7-9 ("Nothing in the claims precludes the processor from also being arranged to transfer protected content in another way as well."). Without those conditions, claim 1 effectively recites only the basic steps of creating, sending, and receiving data:

> 1. A second device for receiving delivery of a protected content …, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:
>> provide a certificate … prior to receiving a first signal, … wherein the certificate is associated with the second device;
>> receive the first signal …;
>> create a second signal, wherein the second signal is derived from a secret known by the second device;
>> provide the second signal …; and
>> receive the protected content ….

Claim 1 recites a second device arranged such that its receipt of protected content is subject to completing several simple and discrete steps. The second device: (a) sends a certificate (a type of data) associated with itself before (b) receiving a first signal (a type of data); (c) creates a second signal (a type of data) based upon information known to the second device; and (d) sends the second signal. After completion of these rudimentary steps, or even if not completed, the protected content (a type of data) may be received. Nothing more is required in the "second device" by the as-construed claims.

Any conditions recited in claim 1 relate only to the "first device." Thus, even if considered, the "when" clause of the as-written final limitation (see red text above) merely "describes one way that the second device can receive the protected content from the first device…." *Markman* Hearing Tr. at 117:11-14; *see also id.* at 117:19-22 ("There is nothing in the claims or written description that precludes the second device from receiving the protected content through some other method."). It does not present any condition or limitation on the "second device" because the "when" clause of claim

1 above is performed entirely by the "first device" and the "second device" just needs a generic and well-known manner of receiving the content from the "first device." *See, e.g.*, '564 patent at 5:42-44 ("The ***first device*** 201 measures the round trip time . . . ." (emphasis added)). The sole depiction of the "second device" in Figure 2 as an empty black box is an apt representation of what the '564 patent considers to *not* be the alleged invention and merely a receptacle of content from another device. *Id.*, Fig. 2. In other words, whether the "second device" receives data is completely up to the "first device," but the conditions and determinations of the "first device" are not limiting on the "second device."

The additional claimed features of the asserted dependent claims (2, 6-11, 14, 18-23, and 25)—which all depend from claim 1—do nothing to alter the essential character of the claims as a whole. These dependent claims merely specify the compositions and characteristics of the data or signals (claims 7, 10-11, 19, 22-23) or secrets (claims 2, 6, 8-9, 14, 18, 20-21, 25) recited in claim 1. These dependent claims are all substantially similar to claim 1 and do not change the focus of the claims as whole—conditionally sending and receiving data. Because the asserted dependent claims do not alter the abstract nature of the claims as a whole, claim 1 is representative of the Asserted Claims for purposes of the § 101 analysis. *See MobileAcuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290-91 (Fed. Cir. 2024) ("Limiting the analysis of a § 101 challenge to [a] representative claim[] is proper when the claims at issue are

'substantially similar and linked to the same' ineligible concept.").

## III.    LEGAL STANDARDS

### A.    Rule 12(c): Motion for Judgment on the Pleadings

To prevail on a Rule 12(c) motion "the movant [must] clearly establish[] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World. Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). In deciding a motion under Rule 12(c), a Court may take judicial notice of matters of public record or of matters whose authenticity is not disputed. *See U.S. ex. rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139-40 (E.D. Pa. 2012) (collecting cases).

Courts routinely resolve patent eligibility issues under 35 U.S.C. § 101 at the Rule 12 stage, "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am.*, 898 F.3d at 1166 (collecting cases). Resolving patent eligibility under Rule 12(c) comports with its general purpose "to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *KOM Software Inc. v. NetApp, Inc.*, 697 F. Supp. 3d 203, 209 (D. Del. 2023).

### B.    Section 101: Patent Eligibility

The Supreme Court has set forth a two-part test for determining if a patent recites patent ineligible subject matter under 35 U.S.C. § 101. *Alice Corp. v. CLS Bank Int'l*,

573 U.S. 208, 217-18 (2014).

### 1.    Step 1: Are the Claims Directed to an Abstract Idea?

First, the court must determine if the patented claims are "directed to" an abstract idea, *id.* at 217, by "evaluat[ing] 'the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter," *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021) (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).  To resolve this question, "it is often helpful to ask whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'"  *Affinity I*, 838 F.3d at 1270 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)).

In many cases, patents have been held abstract at step one when their claims recite using programmed software and conventional computer technologies to achieve something a human could otherwise achieve mentally or manually.  *See Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding software claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" were abstract); *Ericsson*, 955 F.3d at 1328 (finding claims directed to controlling access to resources abstract).  Accordingly, software claims that recite

10

nothing more than functions that "humans have always performed" fail at *Alice* step one. *Content Extraction*, 776 F.3d at 1347.

### 2. Step 2: Do the Claims Provide an Inventive Concept?

If the claim is directed to an abstract idea at step one, courts must then examine the additional limitations of the claim and ask whether they provide any "inventive concept" that transforms the claim into something "significantly more" than a patent on the abstract idea itself. *Alice*, 573 U.S. at 217-18. An inventive concept may be found when the limitations of a claim "when viewed as a whole," provide something "significant beyond the sum of their parts taken separately." *Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.,* 566 U.S. 66, 79-80 (2012). To save an otherwise-abstract claim, such an inventive concept must be recited in the claim itself, not merely in the patent's specification. *Two-Way Media Ltd v. Comcast Cable Commc'ns., LLC,* 874 F.3d 1329, 1338 (Fed. Cir. 2017) (citing *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)).

The Federal Circuit's "precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Ericsson*, 955 F.3d at 1330 (quoting *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)). When a computer-based or software patent achieves advantages that are due simply to the use of generic computer technology, however, such as basic automation or

permitting a pre-computer task to be performed more quickly, these "improvements" do not render a claim patent eligible. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1057 (Fed. Cir. 2017) ("Relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible"). Software claims in which a computer is "invoked merely as a tool" are also ineligible. *Enfish*, 822 F.3d at 1335-36.

## IV.   ARGUMENT

### A.   The '564 Patent is Directed to Patent Ineligible Subject Matter

#### 1.   *The '564 Patent is Directed to the Abstract Idea of Sending and Receiving Data*

The '564 Patent's claims are directed the abstract idea of sending and receiving data.[2]  Nothing more.  *See supra* § II.B.  MCP's Second Amended Complaint includes no allegations or facts that, even if accepted as true, could contradict the abstract nature of the Asserted Claims.   Nor can MCP argue otherwise unless it backtracks on its previous representations to this Court that the Asserted Claims are directed to and claim only a ***second device*** and the actions of a ***first device*** are not required by the Asserted Claims.

Once stripped of the nonlimiting language related to the first device, there is little left of claim 1:

---

[2] Defendants' Final Invalidity Contentions also referred to the claims as "conditionally sending and receiving data," but the "conditions" are only applicable if the "first device" elements are limiting.  Even if they are limiting, the claim is still directed to an abstract idea.

> 1. A second device for receiving delivery of a protected content …, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:
>> provide a certificate … prior to receiving a first signal, … wherein the certificate is associated with the second device;
>> receive the first signal …;
>> create a second signal, wherein the second signal is derived from a secret known by the second device;
>> provide the second signal …; and
>> receive the protected content ….

What remains is a generic functional recitation of computer "instructions arranged to" send data, receive data back, alter the data and send again, and then receive additional data. Courts have found claims directed to such concepts to be patent ineligible. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) (finding claims reciting "a 'distribution rule' that merely receives, matches, and then distributes the corresponding function based on the user's location" directed to abstract idea "of providing information . . . based on meeting a condition" (internal quotation marks omitted)). This case presents no compelling reason to reach a different conclusion.

The Asserted Claims focus on the core idea of sending or receiving data upon the occurrence of an event. As described above, the second device (a) provides a certificate, (b) then receives a first signal, (c) creates and sends a second signal, and (d) receives the protected content. A library provides an apt analogy. A patron (second device) provides her library card (certificate) to the librarian (first device). The patron then receives the catalog of available books (first signal) and requests a particular book with the patron's address (second signal). The patron may receive the book (protected

content) regardless of whether the card is valid or not.   Here, the Asserted Claims do little more than recite the "building blocks of human ingenuity," *Alice*, 573 U.S. at 216, that should be "free to all men and reserved exclusively to none," *Mayo*, 566 U.S. at 71. The added claim language reciting "a processor circuit arranged to execute instructions" does nothing but describe the same age-old idea of conditionally sending and receiving data using generic, well-known computer components.   In sum, the Asserted Claims "merely implement an old practice in a new environment."  *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016).

The Asserted Claims are similar to those found abstract in *Sanderling Management*.   In that case, the claims recited computer-implemented systems and methods "to identify when a condition is met and then to distribute information based on satisfaction of that condition."  65 F.4th at 703.  The Federal Circuit found these claims "directed to the abstract idea 'of providing information—in this case, a processing function—based on meeting a condition,' *e.g.*, matching a GPS location indication with a geographic location."  *Id.*  Similarly, the Asserted Claims here recite a second device arranged to send and receive information (the protected content).  The added element of a "condition" from *Sanderling* is not even present in the Asserted Claims here because any "condition" is solely the responsibility of the unclaimed "first device."  Thus, the Asserted Claims are even more abstract than those found ineligible in *Sanderling*.

14

As alleged in the Complaint, and as construed by the Court, the Asserted Claims require nothing more than a second device that is arranged such that it can receive protected content. But whether or not the claimed **second device** receives the data is determined by the unclaimed **first device**. And as discussed above, the claims as construed fail to claim how that access is controlled in any meaningful way. *Symantec*, 838 F.3d at 1316 ("But when a claim directed to an abstract idea 'contains no restriction on how the result is accomplished . . . [and] [t]he mechanism . . . is not described, although this is stated to be the essential innovation[,]' then the claim is not patent-eligible." (quoting *Internet Patents*, 790 F.3d at 1347-48) (internal citations omitted)). Indeed, the specification and claims make clear that the control of the access to the protected content, including any algorithm performed as part of the control, is performed *entirely by the unclaimed **first device***. Accordingly, the functions performed by the "first device" cannot impart any patent eligible subject matter to the claimed "second device."[3]

To the extent MCP argues that the claim's "character as a whole" should be analyzed on the basis of its constituent parts, each part is itself abstract and provides no components at all, much less anything beyond necessary, routine, and generic components. Creating, sending, and receiving data are all abstract, even where a signal

---

[3] In the library analogy, the additional first device steps are nothing more than the librarian checking whether the patron lives within city limits (distance) before providing the content.

is modified before being sent back.  This is akin to everyday speech (e.g., question and response).  Such processes have been performed in the human mind from time immemorial.  *See Ericsson*, 955 F.3d at 1327.

This Court's construction makes clear that the last clause in the claim ("when the first device determines …") in no way constrains or conditions the second device's receipt of protected content.  *Markman* Order at 3-4; *Markman* Hearing Tr. at 117:11-22 ("That claim language describes one way that the second device can receive the protected content…. There is nothing in the claims or written description that precludes the second device from receiving the protected content through some other method.").  The same is true for any of the other "first device" limitations.  *See Markman* Order at 4; Joint Claim Construction Br. at 102.  The allegations in the Second Amended Complaint confirm that Plaintiff's position is the same.  D.I. 99 at Exhibit B.  For purposes of deciding this Motion under Rule 12(c), Plaintiff's position in the pleadings, coupled with the Court's construction of the claims, dooms the Asserted Claims.

However, even if one considers the first device portions of the claim, they do nothing to change the "focus" of the claimed invention.  The "first device" elements are, at most, conditions or a constraint on the ***unclaimed*** first device, not the second device claimed in the '564 Patent.  And even if they were, authentication via cryptography or encryption is a process "that can be performed in the human mind, or by a human using a pen and paper," *Ericsson*, 955 F.3d at 1327, and indeed, until the

last century was exclusively performed using mental or pen-and-paper calculations. The claims use of a computer to perform cryptographic key operations (e.g., certificate validation) is no less abstract. *Symantec*, 838 F.3d at 1314 (finding claims directed to abstract idea where "[t]he patent merely applies a well-known idea using generic computers"); *Credit Acceptance*, 859 F.3d at 1057 ("Relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible"). A "timed challenge-response" is also an abstract concept long prevalent in human activity. *E.g.*, *NetSoc, LLC v. Match Grp.*, 838 F. App'x 544, 547-50 (Fed. Cir. 2020) (finding claim reciting "tracking a response time" to be abstract); *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 521-23 (D. Del. 2019) (finding claim directed to determining availability by comparing a "response time" to a dynamically-determined time to be abstract). Challenge-response—the proverbial "what is the password?"—has long been used in human activity; and adding a time limit for response makes it no less abstract.

In other words, taken together, the limitations of the claim, with or without the "first device" limitations, amount to nothing more than stacking one abstract idea on top of another. *See RecogniCorp*, 855 F.3d at 1327 ("Adding one abstract idea . . . to another . . . does not render the claim non-abstract."). As discussed in Section II.B. above, the asserted dependent claims all fall within the scope of the above-described abstract ideas (authentication, timed challenge-response, or sending/receiving

17

data/content) and therefore do nothing to "transfigure an idea out of the realm of abstraction." *PersonalWeb*, 8 F. 4th at 1316. Accordingly, the claims here are directed to the abstract idea of conditionally sending and receiving data and fail at *Alice* step one.

### 2. *The Claimed Second Device Provides No Inventive Concept*

There is no "inventive concept . . . evident in the claims," *RecogniCorp*, 855 F.3d at 1327, sufficient to transform the claim into something "significantly more" than a patent on the abstract idea. *Alice*, 573 U.S. at 217-18; *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

Here, the claim elements, viewed both individually and as an ordered combination, are "merely adding computer functionality to increase the speed or efficiency of the process," *Ericsson*, 955 F.3d at 1330. The claimed second device recites only "instructions arranged to" implement generic computer functionality to perform the abstract functions described above. These "well-understood, routine, conventional" components cannot confer patent eligibility. *Alice*, 573 U.S. at 225-26. Each of the recited functions (sending/receiving/creating data) are abstract concepts performed with conventional computer equipment. And nothing in the claim

limitations presents a technical solution to a technical problem sufficient to confer patent eligibility – especially to the claimed "second device." *See Enfish,* 822 F.3d at 1336. Accordingly, the claims fail at *Alice* step two and are therefore patent ineligible.

If MCP attempts to argue that the "first device" elements provide the inventive concept necessary to save the Asserted Claims from ineligibility, the argument must fail. These limitations serve only to constrain the ***unclaimed*** first device, ***not*** the claimed second device. In particular, the final limitation recites "when the ***first device*** determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time." By its text and the Court's construction, this clause dictates what a first device must do. As MCP has repeatedly alleged in its Complaint and in court filings, the Asserted Claims recite a second device—the first device is not "a required element" of the system claim of the '564 Patent. *See, e.g.*, Joint Claim Construction Br. at 102. Thus, constraints on the unclaimed first device cannot confer patent eligibility on the claimed second device.

### B.    The '564 Patent is Ripe for a Determination on Eligibility

There is no reason for the Court to defer this eligibility determination to a later stage. Where, as here, "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," dismissal at the Rule 12 stage is appropriate. *ChargePoint*, 920 F.3d at 765 (quoting *Aatrix Software, Inc. v. Green*

*Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).  The language of the Asserted Claims makes clear their abstract character, and there are no factual allegations that preclude resolution of the eligibility question.  And there are no contrary allegations in the Complaint that provide a basis for Plaintiff to argue otherwise.

Claim construction is complete and no constructions related to the '564 Patent preclude the Court finding, as a matter of law, that the Asserted Claims are ineligible. *See Markman* Order; *see also Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). The Court's constructions further confirm the abstract nature of the claims.  Allowing the Asserted Claims to proceed would prolong this case, needlessly expending resources.  As such, the '564 Patent is ripe for a determination on patent eligibility under 35 U.S.C. § 101.

## V.    CONCLUSION

Realtek respectfully requests that the Court grant judgment on the pleadings holding the Asserted Claims ineligible under 35 U.S.C. § 101 and dismissing the Second Amended Complaint.

ASHBY & GEDDES

*Of Counsel:*                                          */s/ John G. Day*

Sten A. Jensen                                         John G. Day (#2403)
Christopher J. Higgins                                 500 Delaware Avenue, 8th Floor
ORRICK, HERRINGTON & SUTCLIFFE LLP                     P.O. Box 1150
2100 Pennsylvania Avenue                               Wilmington, DE 19899
Washington, D.C. 20037                                 (302) 654-188
(202) 339-8400                                         jday@ashbygeddes.com
sjensen@orrick.com
chiggins@orrick.com                                    *Attorneys for Defendant*

Joseph Kolker
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019-6142
(212) 506-5000
jkolker@orrick.com

Dated:  February 14, 2025

## <u>WORD COUNT CERTIFICATION OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief contains 5,013 words (exclusive of the cover page, tables of contents and authorities, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.

/s/ *John G. Day*

_____

John G. Day

{