## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDIA CONTENT PROTECTION LLC,<br><br>     *Plaintiff,*<br><br>    v.<br><br>REALTEK SEMICONDUCTOR CORP.,<br><br>     *Defendant.* | C.A. No.: 20-cv-1247-CFC-LDH<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF MEDIA CONTENT PROTECTION LLC'S OPPOSITION TO DEFENDANT REALTEK SEMICONDUCTOR CORP.'S MOTION FOR JUDGMENT ON THE PLEADINGS OF PATENT INELIGIBILITY**

Dated: February 28, 2025

OF COUNSEL:

Michael T. Renaud
Adam S. Rizk
Catherine C. Xu
Timothy J. Rousseau
Courtney Herndon
Meena Seralathan
Williams S. Dixon
Tianyi Tan
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY & POPEO P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiff*
*Media Content Protection LLC*

MTRenaud@mintz.com
ARizk@mintz.com
CXu@mintz.com
TJRousseau@mintz.com
CHerndon@mintz.com
MSeralathan@mintz.com
WSDixon@mintz.com
TTan@mintz.com

Peter F. Snell
Brad M. Scheller
Hannah M. Edge
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY & POPEO P.C.
919 Third Avenue
New York, NY 10022
(212) 935-3000
PFSnell@mintz.com
BMScheller@mintz.com
HMEdge@mintz.com

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND .................................................................................2

    A.    Claim Construction Briefing, Hearing, and Order ....................................2

    B.    The '564 Patent..........................................................................4

III.  LEGAL STANDARD .........................................................................7

IV.   ARGUMENT...................................................................................9

    A.    Realtek Cannot Rewrite the Claims to Argue Its Positions ......................9

    B.    *Alice* Step 1: The Claims Are Non-Abstract ...........................................14

    C.    *Alice* Step 2: The Claims Are Directed to a Protectable Invention..........18

V.    CONCLUSION.............................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
    55 F. 4th 900 (Fed. Cir. 2022) ..............................................................17

*Ancora Technologies, Inc. v. HTC America, Inc.*,
    908 F.3d. 1343 (Fed. Cir. 2018) .......................................................8, 16

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ..............................................................9

*CosmoKey Solutions GmbH & Co. Kg v. Duo Security*,
    15 F. 4th 1091 (Fed. Cir. 2021) ..................................................7, 16, 19

*Diamond v. Diehr*,
    450 U.S. 175 (1981)...............................................................................9

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ...............................................1, 7, 8, 9

*INVT SPE LLC v. ITC*,
    46 F.4th 1361 (Fed. Cir. 2022) ............................................................13

*Koninklijke KPN NV v. Gemalto M2M GmbH*,
    942 F. 3d 1143 (Fed. Cir. 2019) .....................................................17, 18

*NetSoc, LLC v. Match Grp., LLC*,
    838 F. App'x 544 (Fed. Cir. 2020)..................................................16, 17

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
    965 F. 3d 1299 (Fed. Cir. 2020) ......................................................8, 18

*Sanderling Management Ltd. v. Snap Inc.*,
    65 F. 4th 698 (Fed. Cir. 2023) ........................................................15, 16

*TecSEC, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) .....................................................*passim*

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020) ............................................................17

Plaintiff Media Content Protection LLC ("MCP") files this brief in opposition to the motion for judgment on the pleadings filed by Defendant Realtek Semiconductor Corp. ("Realtek"). *See* D.I. 144, 145.

## I.    INTRODUCTION

Realtek's patent eligibility argument is flawed because it is untethered from the actual claim language. Indeed, Realtek rewrites the claims to remove portions of *every* element of Claim 1 because the two-step *Alice* framework for the actual claim language demonstrates patent eligibility. *See* D.I. 145 at 7. By omitting claim language, Realtek tries improperly to "describe[e] the claims at such a high level of abstraction and untethered from the language of the claims" to have this Court find the claims ineligible, but this has been repeatedly warned against by the Federal Circuit. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (holding this is improper, as it "all but ensures that the exceptions to § 101 swallow the rule").

Realtek's purported justification for rewriting the claims fails as it is no more than a contortion of the Court's ruling on claim construction. At *Markman*, the Court correctly held that because Claim 1 recites a "second device," "Claim 1 is not a 'system' claim requiring a 'first device,'" and thus the term involving the "second signal" means "that the second device is capable of sending the second signal to the first device." C.A. No. 20-cv-1243, D.I. 49 (hereinafter "Joint Claim Construction

Br.") at 101; *see* C.A. No. 20-cv-1243, D.I. 58 (hereinafter "*Markman* Hrg. Tr.") at 119:15-17 ("I agree with the plaintiffs"). This, however, does not mean that the claim's reference to a first device has no meaning.

By failing to address the actual claim language, Realtek's motion fails, especially under the high burden of proof it faces. When the two-step *Alice* framework is properly applied, the '564 Patent is not directed to an abstract idea and includes an inventive concept. The '564 Patent is directed to specific improvements in communications devices designed for content protection and transfer, and is therefore patent eligible.

## II. BACKGROUND

### A. Claim Construction Briefing, Hearing, and Order

During claim construction, Plaintiffs asserted that the claims of the '564 Patent are directed to a "second device," as claimed, and do not require the first device that is referenced.

Particularly, during claim construction, Plaintiffs asserted that the claims do not require the first device itself be part of a system, but rather require the second device be capable of interacting with the first device in a specific way:

> Claim 1 is not a "system" claim requiring a "first device" and nothing in the claim language or intrinsic record supports such a finding. When viewed in context, the claim language simply indicates that the second device is capable of sending the second signal to the first device.

Joint Claim Construction Br. at 101. Defendants recognized Plaintiffs' position that the claims require the second device be capable of interacting with a first device:

> …claim 1 of the '564 patent requires both that: (1) the second device include instructions arranged to "provide the second signal to the first device," and (2) that the "second signal [be] received by the first device." Ex. 4, Claim 1 (JA44). Philips incorrectly suggests that only the former requirement need be met…

Joint Claim Construction Br. at 102. No party argued that all the portions of the claims referencing the "first device" were irrelevant, let alone that they should or could be excised from the claims. During the claim construction hearing, the Court correctly noted that the claims require a second device, and identify the capabilities the second device must have, but do not require the first device itself to be part of a system. *Markman* Hrg. Tr. at 131:3-9 (analogizing that "configured to receive a USB means … not that it's got the USB plugged into it. It means it has a port for a USB").

The parties also disputed the construction of another term for which "the dispute boil[ed] down to whether with the words 'when' or 'after' in Claim 1 of the '564 … mean, respectively, 'only when' or 'only after.'" *Markman* Hrg. Tr. 116:12-16. The Court held that the "claim language describes one way that the second device can receive the protected content from the first device," but that it is not the only way the second device could receive protected content:

> contrary to the defendants' proposal, the claim language does not teach that the second device can receive the protected content only when or only after the conditions in

3

> the described arrangement to transfer the content are met. There is nothing in the claims or written description that precludes the second device from receiving the protected content through some other method.

*Markman* Hrg. Tr. 117:11-22. The Court characterized Defendants' proposed argument (a construction of "when" as "only when") as "limiting": "Defendants argue that the 'when' and 'after' clauses must be construed as limiting." *Markman* Hrg. Tr. at 117:23-24; *see also* 118:18-23 ("not limited to 'when and only when'").

## B.    The '564 Patent

The '564 Patent's "invention relates to a method of determining whether data stored on a first communication device are to be accessed by a second communication device." '564 Patent, Abstract. It does this via a communication method "wherein the first and the second communication device share a common secret and the common secret is used for performing the distance measurement between the first and the second communication device." *Id.*

The '564 Patent improves the functioning of computer communications over networks, and the process of "determining whether data stored on a first communication device is to be accessed by a second communication device." '564 Patent at 1:36-39. The '564 Patent addresses a need at the time (circa 2002) in the field: "[t]he substantially superior quality of the digital format as compared to the analog format renders the former substantially more prone to unauthorized copying and pirating, further a digital format is both easier and faster to copy." '564 Patent

at 1:53-56; 2:17-18. Thus, the '564 Patent explains, "[i]t is an object of the invention to obtain a solution to the problem of performing a secure transfer of content within a limited distance." '564 Patent at 2:40-42.

The '564 Patent uses "a communication device for performing authenticated distance measurement to a second communication device," which was an improvement over existing distance-bound protocols which did "not allow authenticated device compliancy testing and [were] not efficient when two devices must also authenticate each other." '564 Patent at 1:39-41; 2:31-39. The '564 Patent explains that "[b]ecause the common secret is being used for performing the distance measurement, it can be ensured that when measuring the distance from the first communication device to the second communication device, it is the distance between the right devices that is being measured": "the distance will not be measured to a third communication device (not knowing the secret)." '564 Patent at 2:50-54; 3:16-17. Thus, the communications will only proceed with an authenticated and distance-measured second device. "By using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." '564 Patent at 4:9-11.

The '564 Patent describes an embodiment that includes this technological improvement:

> the first device 301 and the second device 303 have exchanged a secret… In order to perform the distance

> measurement, a signal is transmitted to the second device via a transmitter 309. The second device receives the signal via a receiver 311 and 313 modifies the signal by using the locally stored secret. The signal is modified according to rules known by the first device 301 and transmitted back to the first device 301 via a transmitter 315 … If the received modified signal and the locally modified signal are identical, then the received signal is authenticated and can be used for determining the distance between the first and the second device…

'564 Patent at 6:28-61.

The '564 Patent was asserted in the United States International Trade Commission ("ITC"), during which respondents (including Realtek) challenged its patent eligibility. The Administrative Law Judge held that the claims were eligible, finding that the "claim language at issue here does not cover merely the generalized concept of 'authentication,' nor does it cover '[g]eneralized steps to be performed on a computer,'" and the Commission affirmed. *In the matter of Certain Digital Video-Capable Devices and Components Thereof*, Inv. No. 337-TA-1224, USITC Pub. 744245 (June 8, 2021), 2021 WL 2375006 at 2 (denying motion for summary determination); Inv. No. 337-TA-1224, USITC Pub. 758903 (Dec. 20, 2021) (Public Initial Determination), 2021 WL 6071754 at 100-104; Inv. No. 337-TA-1224, USITC Pub. 769212, (Apr. 26, 2022) (Public Commission Opinion), 2022 WL 1302722 at 2, 58.

## III.   LEGAL STANDARDS

"Supreme Court precedent instructs us to 'first determine whether the claims at issue are directed to a patent-ineligible concept.' If this threshold determination is met, we move to the second step of the inquiry and 'consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application.'" *Enfish*, 822 F.3d at 1334 (citing *Alice* 134 S.Ct. at 2355 (2014)). This analysis "must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and invention at issue." *CosmoKey Solutions GmbH & Co. Kg v. Duo Security,* 15 F. 4th 1091 (Fed. Cir. 2021).

"The 'directed to' inquiry, therefore, cannot simply ask whether the claims involve a patent-ineligible concept." *Enfish*, 822 F.3d at 1335. Instead, for computer-based claims, "the first step in the Alice inquiry … asks whether the focus of the claims is on the specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish* , 822 F.3d at 1335-1336.

The Federal Circuit has explained that "[t]he Step 1 'directed to' analysis called for by our cases depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *TecSEC, Inc. v. Adobe Inc.,* 978 F.3d 1278, 1294 (Fed. Cir. 2020). It is "materially inaccurate" to

characterize claims by "disregard[ing] elements of the claims at issue that the specification makes clear are important parts of the claimed advance in the combination of elements." *TecSEC,* 978 F.3d at 1294. "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish,* 822 F.3d at 1337.

Inventions are not directed to abstract ideas when they are "directed to a specific improvement to the way computers operate." *Enfish,* 822 F.3d at 1336. For example, in *Packet Intelligence,* the Federal Circuit held that a claim that "solves a technological problem by identifying and refining a conversational flow such that different connection flows can be associated with each other and ultimately with an underlying application or protocol" was not directed to an abstract idea. *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F. 3d 1299 (Fed. Cir. 2020). In *TecSEC*, claims that were "directed to improving a basic function of a computer data-distribution network, namely, network security," and were not abstract. *TecSec, Inc. v. Adobe Inc.*, 978 F. 3d 1278 (Fed. Cir. 2020). "While non-computer settings may have security issues addressed by multilevel security, it does not follow that all patents relating to multilevel security are necessarily ineligible for patenting." *TecSec*, 978 F. 3d at 1283. "Improving security ... can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier

approaches to solve a specific computer problem." *Ancora Technologies, Inc. v. HTC America, Inc.,* 908 F.3d. 1343, 1348 (Fed. Cir. 2018).

Under the second step of the *Alice* analysis, in computer-implemented inventions, the computer must perform more than "well-understood, routine, conventional activities previously known to the industry." *Alice,* 573 U.S. at 223. Claims pass muster under step two when they recite "[a]n inventive concept that transforms the abstract idea into a patent-eligible invention" and not simply "an instruction to implement or apply the abstract idea on a computer." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1349 (Fed. Cir. 2016).

## IV.    ARGUMENT

The '564 Patent claims recite eligible subject matter. Realtek's motion does not address the actual claims and fails to meet its burden.

### A.    Realtek Cannot Rewrite the Claims to Argue Its Positions

Because the '564 patent passes muster under the two-step *Alice* framework, including as the ITC found, Realtek resorts to rewriting the claims before conducting its analysis. But even overgeneralizing the claim scope is improper, never mind Realtek's removal of parts of each and every claim element. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("describing the claims at [] a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule"); *Diamond v. Diehr*, 450 U.S.

175, 189 n. 12 (1981) (overgeneralizing, "carried to its extreme, make[s] all inventions unpatentable").

Realtek makes no secret of its claim rewriting, including a rewritten claim eliminating parts from every claim element. D.I. 145 at 5-7. For this reason alone, Realtek's motion fails: it is "materially inaccurate" to characterize claims by "disregard[ing] elements of the claims at issue that the specification makes clear are important parts of the claimed advance in the combination of elements." *TecSEC, Inc. v. Adobe Inc.,* 978 F.3d 1278 (Fed. Cir. 2020). Here, the specification explains that the portions Realtek removes are key aspects of the invention. For example, Relatek removes the very things that are the focus of the '564 Patent: receipt of protected content "from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time." *See* D.I. 145 at 5-6 (removing substantially all of the final part of claim 1). The specification explains the value of using a secret: "[b]ecause the common secret is being used for performing the distance measurement, it can be ensured that … it is the distance between the right devices that is being measured." '564 Patent at 2:50-54. And "[b]y using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." '564 Patent at 4:9-11; *see also* '564 Patent at 6:57-61 ("[t]he time difference … can

then be used for determining the physical distance between the first device and the second device.")

Realtek mischaracterizes the claim construction ruling to justify claim rewriting, but this fails. For example, Realtek asserts that the Court's claim construction requires all references to the claimed "first device" be excised from the claims. *See* D.I. 145 at 5-6. However, there is no justification for doing so, and Realtek cites no authority for rewriting the claims writ large following construction of a single term, much less rewriting claims before conducting a patent eligibility analysis.

Contrary to Realtek's assertions, Plaintiffs explained during claim construction that the claims do not require the first device itself be part of the claimed system: "Claim 1 is not a 'system' claim requiring a 'first device'." Joint Claim Construction Br. at 101. That is, the second device must be arranged to communicate with a first device in a particular way, but the first device is not claimed. As the Court analogized during the *Markman* hearing, if one has a computer configured to receive a USB drive, it must have a port for the USB drive, but it need not have the USB drive attached. *See Markman* Hrg. Tr. at 128:8-18; 131:3-9.

Rather than having argued, as Realtek asserts, that "the 'first device' clauses in claim 1 … are nonlimiting on the claimed second device," Plaintiffs asserted that "the second device is capable of sending the second signal to the first device." Joint

Claim Construction Br. at 101. Even Defendants recognized this distinction, framing Plaintiffs' position as being that "the second device include instructions arranged to 'provide the second signal to the first device'" is one "requirement [that] need be met." Joint Claim Construction Br. at 102. Yet Realtek partially removes this very passage. *See* D.I. 145 at 6 (showing "to the first device" in red), 7 (removing it).

Realtek then applies its incorrect interpretation to other limitations. For example, Realtek removes different claim elements, such as one reciting receipt of protected content under certain conditions. *See* D.I. 145 at 5-6 (removing most of the final part of claim 1). That limitation requires the second device be capable of receiving the protected content when conditions are met, necessitating that the second device be capable of causing them. For example, the second device must transmit a second signal derived from the secret so that the first device can "determine[] that the second signal is derived from the secret," and can compare the "time between the sending of the first signal and the receiving of the second signal."

Realtek also argues claim passages can be removed because "the conditions following the word 'when' and 'after' in the claim language are effectively nonlimiting." D.I. 145 at 6. However, this too is a misinterpretation of the Court's construction. First, the Court's construction did not address all instances of the words "when" or "after." D.I. 145 at 6 (citing C.A. No. 20-cv-1243, D.I. 55 (hereinafter "*Markman* Order") at 3-4, addressing only the "receive the protected content from

12

the first device when…" term). Second, rather than saying that all conditions following the words "when" and "after" are nonlimiting, the Court instead merely said that "'when' is not limited to when and only when, and 'after' is not limited to after and only after." *See Markman* Hrg. Tr. at 118:21-23; *see also Markman* Order at 3, n.6; D.I. 97 (incorporating *Markman* Order into this case).

This means, as the Court explained—and confirmed it was clear, *see Markman* Hrg. Tr. at 118:18-119:18—that although the claims require that the second device be configured to receive the protected content when conditions are met, that does not mean the second device must block receipt when those conditions are not met. When the conditions are met is "not the only time you have to have a receipt"; the claims "should not be understood to preclude the receipt of protected content" under other circumstances. *Markman* Hrg. Tr. at 113:19-114:1. The Court did not hold that the conditions could be removed from the claims (as Realtek's brief does). That is, the claims still require that the second device must be able to receive the protected content when the conditions are met (as the Court said, "the second device **can** receive the protected content" following satisfaction of the conditions), despite there being neither prohibition nor requirement about receipt of the protected content "in another way **as well**." *See Markman* Hrg. Tr. at 118:7-9. For example, as Plaintiffs identified, the Federal Circuit in *INVT* explained that capability claims can be shown to be infringed by evidence of at least one instance where the accused

13

product would perform the claimed function when placed in operation. Joint Claim Construction Br. at 90 (citing *INVT SPE LLC v. ITC*, 46 F.4th 1361, 1371-1375 (Fed. Cir. 2022)).

## B.   *Alice* Step 1: The Claims Are Non-Abstract

Realtek's brief rewrites the claims so extensively because it cannot escape that the actual claims are not directed to an abstract idea, and are patent eligible.

Like in *TecSEC,* in which the claims were "directed to improving a basic function of a computer data-distribution network, namely, network security," the '564 Patent claims are directed to improving a computer's functioning by enabling secure and efficient transmission using authenticated distance measurement over a network. *See TecSec, Inc. v. Adobe Inc.,* 978 F. 3d 1278 (Fed. Cir. 2020) (holding the claims were not abstract at step 1); 337-TA-1224, Order No. 27 at 2 (May 24, 2021) (finding '564 Patent claims non-abstract). The *TecSEC* claims recited a method for providing security in a data network comprising steps of encrypting an object, determining authorization based on an object label, and decrypting if authorization is granted. *TecSEC* at 1282-1283. The Federal Circuit reviewed the specification, which stated that "[u]sing a secure labelling regimen, a network manager or user can be assured that only those messages meant for a certain person, group of persons, and/or location(s) are in fact received, decrypted, and read by the intended receiver." *TecSEC* at 1295-1296. Similarly here, the '564 Patent explains

14

that "[b]ecause the common secret is being used for performing the distance measurement, it can be ensured that … it is the distance between the right devices that is being measured," '564 Patent at 2:50-54, and "[b]y using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." '564 Patent at 4:9-11.

Realtek argues that a "library provides an apt analogy" to the claims, but this fails. *See* D.I. 145 at 13-14. First, there is no analog to the claim requirement that "the second signal is derived from a secret known by the second device," which even Realtek's improperly rewritten claim still includes. Second, Realtek asserts that the patron "may receive the book (protected content) regardless of whether the card is valid or not," but ignores the Court's construction of "when" as being not limited to "when and only when." In the library analogy, the patron needs to be able to receive the book (the protected content) from the library when the library card is valid (when the conditions are met), but that does not preclude the patron from obtaining the book when it is not, e.g., by buying it elsewhere (the protected content is not received when and only when the conditions are met). Third, even non-computer analogs to security improvements do not mean all claims related to computer security improvements are ineligible. *TecSEC* at 1296 ("it does not follow that all patents relating to multilevel security are necessarily ineligible for patenting").

Realtek relies on *Sanderling*, but that case is distinguishable. For example, the Federal Circuit explained that in *Sanderling* the claims were "not directed to a specific improvement in computer functionality but, instead, to the use of computers as a tool," which was "a tool to identify when a condition is met and then to distribute information based on satisfaction of that condition." *Sanderling Management Ltd. v. Snap Inc.,* 65 F. 4th 698 (Fed. Cir. 2023). Unlike the claims in *Sanderling,* in which the server "merely receives, matches, and then distributes the corresponding" information, *see Sanderling* at 703, here the claims improve the functioning of computers using "a communication device for performing authenticated distance measurement to a second communication device." '564 Patent at 1:39-41. As the Federal Circuit has recognized, "[i]mproving security ... can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Ancora Technologies, Inc. v. HTC America, Inc*., 908 F.3d. 1343, 1348 (Fed. Cir. 2018). "The critical question then is whether this correct characterization of what the claims are directed to is either an abstract idea or a specific improvement in computer verification and authentication techniques" *CosmoKey Solutions GmbH & Co. Kg v. Duo Security,*15 F. 4th 1091 (Fed. Cir. 2021) (citing *Ancora*). Here, the use of authenticated distance measurements is a specific technique, authenticated by the use of a certificate and a secret.

Realtek also asserts that *NetSoc* found a claim reciting "tracking a response time" to be abstract, but the claims there "recite[d] steps for establishing a social network on a computer," not for improving security in computers like those here. *See NetSoc, LLC v. Match Grp., LLC,* 838 F. App'x 544, 548 (Fed. Cir. 2020). In *NetSoc,* the claimed "response time" related to a human's time to respond to a message, and was therefore related to organizing human activity, unlike here, in which the predetermined time can be used to measure the distance between devices to improve network security. *See NetSoc*, 838 F. App'x at 548.

Here, like in *Koninklijke,* "the claims do not simply recite, without more, the mere desired result … but rather recite a specific solution for accomplishing that goal." *Koninklijke*, 942 F. 3d at 1151 (Fed. Cir. 2019). The improved communication system adds authenticated distance measurement to secure communications, by including additional data fields—including a certificate associated with the second device and a secret known to the devices—much like the Federal Circuit held that "adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station" is not an abstract idea. *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020); *see also Adasa Inc. v. Avery Dennison Corp.,* 55 F. 4th 900 (Fed. Cir. 2022) (finding non-abstract in part because "the claimed MSBs function as an additional data field"). Just as the claims improve the functionality of the second device but do not require the first device

within a system, a "claim that is directed to improving the functionality of one tool (e.g., error checking device) that is part of an existing system (e.g., data transmission error detection system) does not necessarily need to recite how that tool is applied in a system (e.g., perform error detection) in order to constitute a technological improvement that is patent-eligible." *Koninklijke KPN NV v. Gemalto M2M GmbH*, 942 F. 3d 1143 (Fed. Cir. 2019).

Realtek argues the claims of the '564 Patent are "akin to everyday speech (e.g., question and response)," but even calling it "everyday speech" or "conversation" does not render it abstract: in *Packet Intelligence,* the Federal Circuit held that a claim that "solves a technological problem by identifying and refining a conversational flow such that different connection flows can be associated with each other" was not directed to an abstract idea. *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F. 3d 1299 (Fed. Cir. 2020).

### C.    *Alice* Step 2: The Claims Are Directed to a Protecable Invention

Realtek's assertions with respect to *Alice* step two are conclusory. For example, Realtek asserts that "[t]he claimed second device recites only 'instructions arranged to' implement generic computer functionality to perform the abstract functions," but does not explain how the claims lack an inventive concept. For example, Realtek does not assert that using authenticated distance measurements was routine or conventional, especially in the context of the claims as a whole. The

claims require the second device be configured for a specific ordering of transmissions and receipts, improving computer security. The '564 Patent explains that "[b]ecause the common secret is being used for performing the distance measurement, it can be ensured that … it is the distance between the right devices that is being measured." '564 Patent at 2:50-54; 3:16-17. The ordered combination of steps allows greater security: by "using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." '564 Patent at 4:9-11.

Even claims directed to abstract ideas are nonetheless patent eligible where they add an inventive concept. For example, claims allegedly abstract and directed to authentication were found eligible where the "claims and specification recite a specific improvement to authentication that increases security, prevents unauthorized access by a third party, is easily implemented, and can advantageously be carried out with mobile devices of low complexity." *CosmoKey,* 15 F. 4th at 1094 (finding inventive step including because claim steps included "as a criterion for deciding whether the authentication to the transaction shall be granted or denied, having the authentication device check whether a predetermined time relation exists between the transmission of the user identification and a response"). The Federal Circuit reasoned that "the specification explains that compared to the prior art and conventional multifactor authentication systems, the '903 patent performs user

authentication" in an improved way. *CosmoKey,* 15 F. 4th at 1099. Similarly here, the specification explains that the authenticated distance measurement improves upon conventional secure communications by decreasing the likelihood that incorrect devices are provided the protected content: "[b]y using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." '564 Patent at 4:9-11.

Realtek also does not address any dependent claims, which each add more to the ordered combination of claim elements, and therefore further support eligibility.

## V.   CONCLUSION

For the foregoing reasons, MCP respectfully requests that the Court deny Realtek's motion for judgment on the pleadings.

Dated: February 28, 2025                    Respectfully submitted,

                                                      FARNAN LLP

OF COUNSEL:

                                             */s/* Brian E. Farnan

Michael T. Renaud                                Brian E. Farnan (Bar No. 4089)
Adam S. Rizk                                     Michael J. Farnan (Bar No. 5165)
Catherine C. Xu                                919 N. Market Street, 12th Floor
Timothy J. Rousseau                        Wilmington, DE 19801
Courtney Herndon                         Tel: (302) 777-0300
Meena Seralathan                         Fax: (302) 777-0301
Williams S. Dixon                        bfarnan@farnanlaw.com
Tianyi Tan                                      mfarnan@farnanlaw.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY & POPEO P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

MTRenaud@mintz.com
ARizk@mintz.com
CXu@mintz.com
TJRousseau@mintz.com
CHerndon@mintz.com
MSeralathan@mintz.com
WSDixon@mintz.com
TTan@mintz.com

Peter F. Snell
Brad M. Scheller
Hannah M. Edge
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY & POPEO P.C.
919 Third Avenue
New York, NY 10022
(212) 935-3000
PFSnell@mintz.com
BMScheller@mintz.com          *Counsel for Plaintiff*
HMEdge@mintz.com              *Media Content Protection LLC*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,753 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief, and does not include the cover page, tables of contents and authorities, or the counsel blocks.

Dated: February 28, 2025                   /s/ Brian E. Farnan
                                           Brian E. Farnan (Bar No. 4089